# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM 39177

————————————

### UNITED STATES
*Appellee*

v.

### Demetris A. TOUTTOULOS
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 24 April 2018

————————————

*Military Judge:* Natalie D. Richardson (arraignment); Matthew P. Stoffel.

*Approved sentence:* Bad-conduct discharge, confinement for 180 days, forfeiture of $1,044.00 pay per month for 6 months, and reduction to the grade of E-1. Sentence adjudged 12 May 2016 by GCM convened at Joint Base Elmendorf-Richardson, Alaska.

*For Appellant:* Major Jarett F. Merk, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major Meredith L. Steer, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, MINK, and DENNIS, *Appellate Military Judges.*

Judge DENNIS delivered the opinion of the court, in which Senior Judge JOHNSON and Judge MINK joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

DENNIS, Judge:

A general court-martial convicted Appellant, contrary to his pleas, of one specification of wrongful use of heroin on divers occasions, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1] Officer and enlisted members sentenced Appellant to a bad-conduct discharge, confinement for 180 days, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the discharge, confinement and rank reduction as adjudged, but only so much of the forfeitures as provided for $1,044.00 pay per month for six months.[2]

In his sole assignment of error, Appellant alleges ineffective assistance of counsel.[3] Specifically, he alleges that his defense counsel failed to advise Appellant of his rights at a post-trial Article 39(a), UCMJ, 10 U.S.C. § 839(a), session to address a decertification issue with the drug testing laboratory that tested and analyzed Appellant's positive urine samples. Appellant also alleges that his trial defense counsel "failed to zealously advocate" on his behalf during the hearing. We also independently address the presumptively unreasonable delay between Appellant's trial and the convening authority's action. We find no error prejudicial to Appellant's substantial rights and affirm the findings and sentence.

## I. BACKGROUND

Appellant's conviction was based almost entirely on the positive results of four urinalysis tests taken at Joint Base Elmendorf-Richardson, Alaska. Each of the tests was analyzed at the Tripler Forensic Toxicology Drug Testing Laboratory (FDTL-Tripler) at the Tripler Army Medical Center, Hawaii. On 1 August 2016, approximately three months after Appellant's trial, FDTL-Tripler was decertified for testing and reporting 6-Acetylmorphine, also known

---

[1] Appellant was acquitted of one specification each of wrongful use of morphine, hydromorphone, and codeine, in violation of Article 112a, UCMJ, and one specification of breaking restriction, in violation of Article 134, UCMJ, 10 U.S.C. § 934.

[2] Appellant received 90 days of pretrial confinement credit and 90 days credit for illegal pretrial punishment in violation of Article 13, UCMJ, 10 U.S.C. § 813. Because Appellant completed his term of confinement prior to action, the convening authority adjusted the forfeitures to comply with Rule for Courts-Martial (R.C.M.) 1107(d)(2), Discussion ("When an accused is not serving confinement, the accused should not be deprived of more than two-thirds pay for any month . . .").

[3] Appellant's claim is made pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

as 6-AM, the metabolite for heroin, after failing to identify a known positive sample during a proficiency analysis. The lab was recertified on 20 September 2016 after validating a new method and completing a certification set.

Three of Appellant's samples, those originally reporting a positive result for heroin, were later retested at a separate certified facility. All three samples were reconfirmed as positive on 18 August 2016, albeit with slightly different concentrations of heroin.[4]

The convening authority ordered a post-trial session "to address evidentiary matters that arose after trial that may affect the legal sufficiency of the findings of guilty" in Appellant's case as authorized by R.C.M. 1102(d). The Article 39(a), UCMJ, session was held on 12 October 2016. The session consisted primarily of marking several additional appellate exhibits regarding FDTL-Tripler's decertification and recertification, as well as the results of the retesting of Appellant's samples. The military judge also noted that Appellant's trial defense counsel requested and received additional consultation with a forensic toxicologist to assess the impact of the additional evidence on Appellant's case. Appellant was personally asked only one question: whether he understood the purpose of the session. He said that he did. The session ended 12 minutes after it began.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

Appellant's claim of ineffective assistance of counsel pertains only to the post-trial representation he received regarding the FDTL-Tripler decertification.

This court reviews claims of ineffective assistance of counsel de novo. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009) (citations omitted). When reviewing such claims, we follow the two-part test outlined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The United States Court of Appeals for the Armed Forces (CAAF) has applied this standard to military courts-martial, noting that "[i]n order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency

---

[4] The first urine sample originally tested positive for heroin at 13 nanograms per milliliter (ng/mL) but retested at 10 ng/mL. The second urine sample originally tested positive for heroin at 39 ng/mL but retested at 37 ng/mL. The third urine sample originally tested positive for heroin at 90 ng/mL but retested at 75 ng/mL. All three samples retested at concentration levels above the Department of Defense cutoff level to be confirmed positive.

resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361–62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *Mazza*, 67 M.J. at 474).

Appellant's right to counsel extends to post-trial proceedings. *United States v. Cornett*, 47 M.J. 128, 133 (C.A.A.F. 1997). As a general rule, al-though defense counsel is responsible for making tactical decisions, he should act "after consultation with the client where feasible." *United States v. MacCulloch*, 40 M.J. 236, 239 (C.M.A. 1994) (citing ABA Standard 4-5.2(b) (1993)). Applying the *Strickland* analysis, we need not decide if defense counsel was deficient during the post-trial representation of Appellant if Appellant fails to show that the alleged deficiency resulted in prejudice. Appellant has failed to make such a showing in this case.

Both Appellant and trial defense counsel submitted declarations regarding the post-trial Article 39(a), UCMJ, session. By order of this court, Appellant's trial defense counsel submitted a declaration outlining his consultation with Appellant. After discussing the evidence with the defense expert in forensic toxicology, trial defense counsel discussed the issue with Appellant. Defense counsel explained that the evidence "did not serve as a sufficient basis for requesting a new trial," that "the post-trial session would be very short," and that "there would be no motions presented." Appellant's declaration was largely consistent with that of his trial defense counsel, but Appellant's declaration added that his counsel "believed that the dates of my urinalysis and the time of the decertification were not close enough to bring up a defense." Appellant also claimed that his trial defense counsel "did not make it seem like I had any other options or motions that we could have pursued." Appellant asserts that had he known of his options, he would have wanted to move "for a retrial or any type of review or relief at that time."

Setting aside the difference of opinion between Appellant and his trial defense counsel, the critical issue here is whether a request for a new trial would have been granted. Requests for new trial on the basis of newly-discovered evidence are granted when Appellant can establish the following: (1) the evidence was discovered after the trial; (2) the evidence was not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence; and (3) the newly-discovered evidence, if considered by a court-martial in light of all other pertinent evidence, would probably produce a substantially more favorable result. R.C.M. 1210(f)(2)(A)–(C). Appellant asserts that he would have asked for a new trial, but he has not offered any evidence to show that the decertification evidence would have led to a different result. As noted by his trial defense counsel, the dates of his urinalysis and the timing of the

decertification did not establish a defense.[5] Also telling is the fact that Appellant's samples were retested at a separate facility which confirmed, once again, that the samples were positive for heroin.

Based on our review of the record, we are convinced that a request for a new trial based on the decertification evidence would have been denied. Accordingly, we find that Appellant has failed to demonstrate prejudice and deny his claim of ineffective assistance of counsel.

## B. Post-Trial Processing Delay

It took 174 days from the day Appellant was sentenced for the convening authority to take action.

Where the convening authority's action is not taken within 120 days of the end of trial, we apply the presumption of unreasonable post-trial delay established by the CAAF in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). We review de novo whether Appellant's due process rights were violated because of post-trial delay. *Id.* at 135. In conducting our analysis, we have considered the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) Appellant's assertion of the right to timely review and appeal; and (4) prejudice. "[These] four factors are balanced, with no single factor being required to find that post-trial delay constitutes a due process violation." *Moreno,* 63 M.J. at 136 (citing *Barker*, 407 U.S. at 533).

After applying the *Barker* factors, we conclude that the 54-day delay, while presumptively unreasonable, was adequately explained by the record. The FDTL-Tripler was decertified on 1 August 2016 as the transcript was being reviewed for certification by the military judge. Notably, both counsel and the military judge certified the original transcript well within the required 120-day period. Notwithstanding their efficiency, the decertification required retesting of Appellant's samples and the scheduling of a post-trial Article 39(a), UCMJ, session on 12 October 2016. We also note that action was taken just 21 days after the post-trial hearing and docketed with this court 14 days after action. In light of these particular circumstances, we find that the Government acted with reasonable diligence in the post-trial processing of Appellant's case.

Where, as here, there is no discernible prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system."

---

[5] The supplemental records indicate that the heroin testing error at the FDTL-Tripler occurred in May 2016. We note that each of Appellant's samples resulting in a positive result for heroin occurred between on or about 10 December 2015 and on or about 4 February 2016.

*United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Considering the relevant factors together, we conclude that the 174 days that elapsed between the conclusion of trial and the convening authority's action are not so egregious as to impugn the fairness and integrity of the military justice system.

Recognizing our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not.[6] On the whole, the processing of Appellant's case has not been subjected to excessive post-trial delay, and we perceive no substantial harm to Appellant, prejudice to the interests of justice or discipline, or erosion of this court's ability to conduct our review or grant appropriate relief that would move us to modify an otherwise fitting sentence.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Article 59(a), UCMJ, 10 U.S.C. §859(a), and Article 66(c), UCMJ. Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[6] These factors include: (1) how long the delay exceeded the standards set forth in *Moreno*; (2) what reasons, if any, the Government set forth for the delay, and whether there is any evidence of bad faith or gross indifference to the overall post-trial processing of this case; (3) keeping in mind that our goal under *Tardif* is not to analyze for prejudice, whether there is nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay; (4) whether the delay has lessened the disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline; (5) whether there is any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation; and (6) given the passage of time, whether this court can provide meaningful relief in this particular situation. *Gay*, 74 M.J. at 744.